[No. 12598. Department One. April 11, 1916.]

F. G. MONROE, *Appellant*, v. DAVID RANKIN et al., *Respondents*.[1]

CONSPIRACY—TO DEFRAUD—EVIDENCE—SUFFICIENCY. A conspiracy of attorneys in asserting a fictitious claim for damages from slander is not established by evidence of unethical conduct between the attorney and his client and in disclosing to plaintiff the contents of a letter inviting participation in a suit for slander, inducing the settlement, where the cause of action existed and the attorney did nothing that any attorney might not properly do in the interests of his client (CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered May 25, 1914, dismissing an action in tort, after a trial on the merits to the court. Affirmed.

*McAulay & Meigs* and *Henry J. Snively*, for appellant.

*George B. Holden*, for respondent Rankin.

*Wende & Taylor*, for respondents Gordon et al.

MORRIS, C. J.—Appellant sought in this action to establish a conspiracy between respondents, who are attorneys at law, to defraud appellant by asserting against him a fictitious claim for damages growing out of certain slanderous statements said to have been made by appellant, and inducing him to compromise a contemplated action by paying $1,200. The issues being made up, the cause was first submitted to a jury, which disagreed. Subsequently, under stipulation, the

[1]Reported in 156 Pac. 564.

cause was submitted to the court, resulting in judgment of dismissal, from which appeal is taken.

The facts need not be specifically referred to, since we base no affirmative holding upon them. Rankin resided at North Yakima, the other parties at Zillah. Complaint was made to Rankin by a clergyman of Zillah of certain alleged slanderous statements made by appellant. Rankin wrote Gordon inviting him to assist in the contemplated action. Upon receipt of this letter, Gordon called on Monroe, informed him of the receipt and contents of the letter, and urged him to seek a settlement rather than litigate the matter. The amount for which a settlement could probably be procured was discussed, and it was finally determined to accede to Gordon's advice. On the next day, Monroe, his wife, and Gordon went to North Yakima, Monroe taking with him two certificates of deposit of $500 each. Arriving at North Yakima, Gordon sought out Rankin, and together they proceeded to a hotel where Monroe and his wife were stopping and entered into negotiations for settlement. The result of these negotiations was a stipulation signed by the Monroes and the party alleged to have been slandered, satisfying all differences between them, whereupon Monroe delivered to Gordon the two certificates of $500 each, properly indorsed, together with a check for $195. The certificates were subsequently handed to Rankin.

There is no proof of any conspiracy between these attorneys to defraud appellant by asserting a ficticious claim against him for the purpose of obtaining money. The cause of action existed and Rankin had been regularly retained to prosecute it. There was nothing improper in Rankin securing the assistance of Gordon in the action he contemplated bringing. Nor can it be said that efforts to compromise impending litigation evidences conspiracy between the attorneys representing the respective parties. There is evidence of unethical conduct in the contract between Rankin and his client, and in the act of Gordon in disclosing the contents of

Rankin's letter to Monroe. If Gordon did not care to associate himself in the action, as requested in Rankin's letter, he should have so informed Rankin and let appellant take the initial step in securing his assistance to obtain a settlement. Unethical conduct on the part of these attorneys, however, is not a subject of inquiry in this action. We apprehend, after reading the record, that appellant's own consciousness was as great a factor moving him to the settlement agreed upon as anything that might have been said by either of the attorneys. So far as Rankin is concerned, we find nothing said or done by him in the negotiations for the settlement that any attorney might not properly do in the interests of his client. It is not necessary to produce direct and positive proof to establish a cause of action based upon fraud, circumstances being sufficient when they lead to the natural and irresistible evidence of fraud. But such circumstances cannot arise from strained inference and conjecture. *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738.

The judgment is affirmed.

MOUNT, FULLERTON, and ELLIS, JJ., concur.

CHADWICK, J. (dissenting)—The defendants have been admitted to the bar. It may be admitted that Rankin was regularly retained to bring an action against the Monroes. His contract was to take eighty per cent of all moneys collected from the Monroes, together with a ten-dollar retainer fee in full satisfaction for his services. He was "thrifty." He wrote a letter to Gordon, inviting him to assist with the case, "in as much as you are living there and could doubtless see all the witnesses."

Gordon posed as the friend and adviser of the Monroes. After calling their attention to the threatened suit, and "throwing a scare" into them, he induced them to go to North Yakima with him to see Rankin and seek a compromise. They remained in their room at the hotel until he could go out and get Rankin, who came to the hotel. After some ne-

gotiations, they paid Rankin and, unbeknown to themselves, Gordon, the money they now seek to recover. They did not know of Gordon's secret compact with Rankin, or that he would be a party to the division of eighty per cent of the money Gordon advised them to pay in satisfaction of the claim presented by his confederate.

It seems to me that the court has lost sight of the real issue and held that, since the Monroes may have indeed been guilty of a slander against the "clergyman," they have only paid out what they *might* have paid at the end of a lawsuit, and they should not now complain. They say:

"We apprehend, after reading the record, that appellant's own consciousness was as great a factor moving him to the settlement agreed upon as anything that might have been said by either of the attorneys."

Such considerations have no place here. The only question is: Were the Monroes induced by the fraudulent manipulations of Gordon and Rankin to part with their money? It may be that, had some disinterested and loyal attorney advised them, instead of an adversary party who hoped to divide eighty per cent of $5,000 or $10,000 with a confederate, they would have paid less than they did and possibly nothing at all. They may have had a defense in law.

We can safely leave the merits to the Monroes and the "clergyman," who asked for nothing more than an "apology." It requires no straining of inference or conjecture to hold to the fact, established by an overwhelming weight of the testimony, that defendants in this case are guilty of a deliberate wrong, dishonorable to themselves and discreditable to the profession.